Taylor v. Deangelis Mr Sheehan, ready? Revitalization? Yes, I'd like to take five minutes of time for a little. Yes, sir. Thank you. Just trying to see if this is high enough. Here we go. May it please the court, John Sheehan for the United States trustee. There are three basic statements in this case for which Judge Sigmund sanctioned the Udren firm. And these are one, Ms. Doyle's statement that the Taylors lacked equity in their home, two, her statement that the original proof of claim was correct as filed, and third, her statement in the motion for a relief from stay that the Taylors had missed their payments beginning in November 2007. Mr. Sheehan, if I could just interrupt you with something in the nature of a threshold question. Sure. Because we're dealing with bankruptcy rule 9,011. And frankly, if I said I'm not an expert in bankruptcy, it would be one of the understatements of the year. But I query whether we have ever, in a precedential opinion, declared that our rule 11 jurisprudence is transferable to or automatically applicable in the 9,011 context. I think we've only got a few opinions dealing with 9,011. Do you have any position on that? Or do you know whether we've spoken in some way that I've missed? No, the general rule is that rule 11 case law is at the very least considered persuasive in 9,011 cases. Most of the terms of the two sections, of the two rules, are identical. And where there is identical language, bankruptcy courts usually look to rule 11 cases for guidance. And I don't have the two in front of me right now. I believe there may be some technical differences between the two where they would not apply. But I'm not sure any of those differences come into play in this case. And going back, though, to these three statements, I think what's notable here is that for the first two of them, at least, there is really no factual issue that's in dispute for this appeal. It's undisputed that, for example, that the Taylors did have equity in their home at the time their case filed. It's also undisputed that the original HSBC claim contained errors. And in both cases, we know that because HSBC eventually filed a amended proof of claim They seem, Mr. Sheehan, to be mistakes and errors that lawyers make from time to time. They're flubs and pleading. They're sort of like ministerial errors that a lawyer might say, oh, jeez, I got that one wrong. Let me fix it. Is that the kind of thing that warrants or justifies a sanction like this? Well, what's significant there is the judge segment did not sanction the Uterine Firm on those two points because the pleadings were wrong. Judge Sigmund sanctioned them because she had testimony from Ms. Doyle that revealed that Ms. Doyle had really done absolutely nothing to verify those pleadings before she filed them. Well, now, didn't the bankruptcy court include in the basis for sanction a representation that Ms. Doyle made in the Lyft stay motion? Wasn't she sanctioned in part for the statement, debtors have failed to make payments to discharge the arrearages on the mortgage or have failed to make the current monthly payment on the mortgage since the filing of the Chapter 13 petition or have failed to do both? And wasn't that, in fact, given the disjunctive nature of the declaration, correct in one of the disjunctive respects? Well, we, you know, I think the question here basically is how do you naturally read that language and... Well, the first question is, wasn't that a basis for the sanction or have I read the basis for the sanctions? There were actually, yeah, with that statement right there and we're talking, and this is actually the third of the three bases that I mentioned at the outset. There's actually two alternative bases for the sanction there. The first basis is simply that this statement is wrong, that you can read that statement as saying that the tailors have paid nothing since the commencement of the bankruptcy case or at least since November 2007. And as the Uterine and Femur Zone Brief reflects, that statement on its face is not correct. Well, I said they were minor matters, but from your standpoint, they're misrepresentations. It's misrepresentations, right. And it is misrepresentations. But debtors had failed to make some payments, hadn't they? Right. They were not current, they were not current on their mortgage at the time the motion was filed. So that statement was at least technically correct, wasn't it? Right. And that actually leads into the alternative basis for Judge Sigmund's ruling, which is even if you read that paragraph the same way that the uterine firm does and conclude that, yes, this was correct in some technical sense, at the very least, it is misleading. It's misleading because the only thing that makes this statement correct technically is the fact that you had a payment that was not credited to her account because it went into the suspense account instead. Now the suspense account was mentioned on page two of this pleading, but there was no explanation of what it means for payment to be in suspense. The tailor certainly didn't understand that, the tailor's lawyer didn't understand that, and Judge Sigmund didn't understand that. Wouldn't the failure to make one single payment, one month's payment, be sufficient to justify the stay? Now the standard for relief under Section 362 of the Bankruptcy Code is the secured lender has to generally show a lack of protection for its secured interest. And in extreme cases, a payment default alone may— Had Ms. Stoyal's application done that? It hadn't shown—again, there's no single bright line test for when a lifestay motion is granted. A lot of facts come into play, and the default is one, but realistically a judge will also look at whether the debtors have been attempting to keep current or at least making some payments as opposed to a debtor that has simply stopped paying altogether. And a debtor who stopped paying altogether, which is, again, we believe the natural reading of that paragraph, is a much stronger case for relief from the automatic stay than a debtor who, as it turns out, was simply perhaps $200 per month behind and a few weeks late on the payments. And in fact, it's notable that when Judge Sigmund did find out the true nature of the payment history here, she denied the automatic stay motion. May I ask something from a slightly different approach here? Hasn't this circuit court uniformly required notice of the form of sanctions before it will allow a judge to impose sanctions? Isn't that correct? That is correct, and that's also, you know, that's also what is required by 9011C2. And the issue... And isn't the form of sanctions really something that could be very crucial in mounting a defense to a motion for sanctions? I mean, it would seem to me to be a pretty important part of a sanctions proceeding, wouldn't it be? That is, and if I can address that for a minute. And where's the notice of the form of sanctions in this case? It's in a few places. You have the, you know, first off, the written order that commenced this was the June 9th order, which is on page 96 of the record. And if you look at footnote one of the first page where Judge Sigmund sets out the factual basis for the inquiry, she does mention the signing and filing pleadings without knowledge or inquiry regarding... Can you give me that page again? This is, I believe, on page 96 of the record. Thank you. And again, the relevant language is in footnote one at the bottom of that page. And as we are going to brief, we take the position that this does put the Uterine Firm on notice for exactly what they were eventually sanctioned for. And on top of that, even though I will... Not what they were sanctioned for, but the form of the sanctions. Right. And in the context of this, and we believe you do have to look at the context, this came right after a hearing on June 5th where, again, Judge Sigmund orally notified the Uterine Firm that she was considering sanctions for, quote, filing these things without any knowledge. And then the opening statement at the hearing on July 23rd, which I believe I think we misidentified as being a June 9th hearing in our brief. But the July 23rd hearing, this is on the July 23rd hearing, she does specifically mention the Rule 9011 obligation. And again, a few points here. One is that... To prevail, Mr. Sheehan, you have to show that the district court was wrong in concluding this layered approach that the bankruptcy judge abused its discretion. Would that be accurate? Well, I'm... Is it not an abuse of discretion standard? It is an abuse of discretion standard. What I'd like to point out...  Bankruptcy judge abused her discretion. Is that right? That's not quite right. Actually, your standard of review over the district court is plenary. And that... And what that means here... Plenary as to what? Well, as to... Not whether or not sanctions were appropriate, is it? Well, in the sense that your view that the bankruptcy judge's decision under the exact same standards... I thought we sat in the same position as the district court. We're looking at whether the bankruptcy court abuses its discretion. So our review of the district court is plenary in that we're reviewing in the same way the district court did. Right. But in terms of what the bankruptcy court did in imposing sanctions well known, that is an issue for abuse of discretion. That is correct. Okay. Should we not be looking at the sanctions here and separating out the sanctions as they are imposed upon each individual and the firm differently? And if so, what is the basis in the rule or in any kind of Rule 11 jurisprudence that you know of for sanctioning Mr. Udren for, as I understand it, being responsible generally for the culture of the law firm? I didn't see anything linking him directly to the filing of a single pleading or submission. And I read the record. I read all the testimony. In fact, he was a witness. He testified to how little he knew about NUTRAC and he testified that he had no involvement at all with this particular matter. How can we sustain sanctions as to him? Well, in terms of the basis for the sanction against Mr. Udren, that is, in fact, in the text of 9011, that 9011C, which, you know, which expressly provides that a person responsible for another attorney's Rule 9011 violation may himself be sanctioned. Now, whether Mr. Udren was responsible for this. All right. That's what it says. How is he responsible for it? Well, that is a finding of fact. And there are two. Should we impose some kind of proximate cause test here? And if so, just how proximate is that? If somebody is sloppy and places the incorrect entry of an amount in a submission that's inconsistent with what was in a proof of claim? Well, the standard, I mean, again, this is a factual finding. And your standard of review of Judge Sigmund here is clear. So really, the issue for this court is whether there is any basis in the record for her to Mr. Udren was responsible for the, again, for the culture, for the policies that led to the Rule 9011 missteps in this case. Do you know of any support in any of the Rule 11 cases for a determination that is so attenuated in a causative way for responsibility for a sanctionable act or inaction? Well, we are virtually no case law in either direction discussing the responsible four-prong of 9011. Can you sanction the captain of the ship for the bad behavior of the crew? Well, again, that's a factual question. If the... It's not a factual question. Well, if it's a factual determination, then it's completely unbounded and the courts, the district courts under 11, the bankruptcy courts under 9011 can sanction whoever they want to so long as they can find out there somewhere in the universe in an actual cause sense some responsibility for what ultimately occurs in the courtroom or through some filed submission. Well, again, it's a question of drawing the line and certainly if this court feels, looks at the record and feels that that was a completely unfounded factual finding by Judge Sigmund, you can reverse that part of her ruling under the clear error standard. You have some time for rebuttal, maybe you can come back and respond in greater detail, Mr. Sheehan. Thank you very much. Mr. Bart? Thank you, Your Honors. Jonathan Bart, Wilentz, Goldman, and Spitzer on behalf of the Udren firm, Lorraine Doyle and Mark Udren. When David Fitzgibbons, a first-year associate, stood before Judge Sigmund on May 1st, which started these proceedings, I don't think anybody had any idea that the fact that a motion for relief from state proceeding as to which repeated false representations had been made, that payments had actually been made, which weren't made, would end up leading to a motion for sanctions and an opinion which has the U.S. trustee here, because it's become a cause celeb, it's a political issue, not a small sanctions hearing involving a first-year associate. Should the practice lapses, or worse perhaps, of debtors' counsel be any kind of factor in our determination, and in fact, was it correct for the district court to consider that at all in its determination over the propriety of the sanctions? Well, I think that it is absolutely required in this case, Your Honor, because You mean the context in which the alleged misrepresentation? I don't think that my clients made any misrepresentations. I think they're all literally true, and we point that out. The payment default from the start, at all times. Let me ask, just to follow up this one, what I think is a point, which is the context, which is the computers that are feeding information and that lawyers are taking the information that is being put into pleadings without investigating, necessarily investigating what that information is, is part of this case? Well, I think that there is... I don't know if it excuses the conduct. Well, I mean, I think we all know of the Hill decision that came out of Western Pennsylvania recently in state court, in which lawyers admitted that they didn't even review pleadings that were filed. Reasonable investigation is at the very heart of what Rule 11 is about. That's absolutely correct, Your Honor. And... Sounds like you're throwing a towel in. No, not at all. I think reasonable investigation actually occurred in this case. How can reasonable investigation occur when you actually have a document in your possession that states a fact, or in this case, a figure, that is completely contrary to a figure you yourself then place in a submission to the court, a pleading? Well, that... Different from what you have, and that was provided to you by a client. You're referring, obviously, now to the proof of claim, which my client did not file. The objection to the proof of claim... I'm referring also to the motion for stay. The motion for a stay? I'm not aware of any motion for... Let me... Sorry, the motion... That was my motion. The motion for relief from stay. The motion for relief stated two things. One, that there were three payments behind, and that two payments had not been made at all. One was in suspense. That's what it says. There's a suspense account right there. As of the time of the filing, which is January 15th, the September payment had been made short. There was no flood insurance payment made. Then the October payment came in in the same amount. No payment at all was received in November. No payment at all was received in December. At the time the motion was filed, they were two months full behind, plus another month in which they were short, and the motion reflected that there was a suspense account with a balance which was being credited to their account. So there's nothing at all false about that. The other aspect of the motion for relief from stay was an allegation that there was no equity in the property, and it was not necessary to a reorganization. There was already a judgment in this case. This is after- But there was equity in the property. No. It's not of record whether there was equity, Your Honor. However, this house eventually went to sheriff's sale and was taken on the writ after the debtors defaulted in bankruptcy. There was no equity. There was no bidders at the sheriff's sale. It went for less than the amount. If you look at the schedules filed by the debtor, there are massive confusion and misinformation. In one point, the schedules say, one, it didn't list the judgment. Secondly, it lists the- You're talking about, I'm sorry, you're talking about the misrepresentations made by the debtor? I'm talking about the evidence of whether there was equity in the property. First of all, it was never an issue in the case. What happened is, in the proceedings, which went on all summer, the trustee asked Ms. Doyle what she knew about the equity in the property, but it was never, the motion wasn't pushed. I thought, Mr. Barth, that the representation was made that there was no equity in the property, and the bankruptcy court- In the motion for relief, the alternate grounds for relief- And the bankruptcy court disputed that, and it was never corrected. I mean, she was never challenged in her decision. Well, first of all, there's a series of requests for admission, which asked the debtors to admit, went to attorney, and here's where the attorney involvement occurs again, Your Honor. Whether there was any equity in the property, they were not answered, so they're deemed admitted. So that's what was before the court. What really annoyed Judge Sigmund is the fact that an unanswered series of requests for admission were proffered. But that's the responsibility of the debtors' counsel, who didn't answer them. At the hearing, Ms. Doyle said, they asked her, what was the basis for your allegation? She said, I know where the property is, and I didn't believe there was any equity in that property, which turned out to be true. You would not dispute that the heart of the problem here is that information is taken from a computer, and that information is included in court pleadings, but you don't dispute that some of that information was just dead wrong? Not the information that the Udren firm got. It was the Moss Cadillus firm, which did the proof of claim that got the incorrect information. But didn't Ms. Doyle then, in response to a claim objection, state that all figures contained in the proof of claim are accurate? Well, she did, Your Honor. But you have to look at that in the context of the objection. The only objection- But your position then has to be that she had no obligation to go beyond what was on the face of the POC filed by another firm, right? What I'm saying is she had no obligation to go beyond the face of what was in the objection. The only thing that was in the objection was an objection to the- Well, then answer my question. Of flood insurance. Then answer my question. Did she or did she not have an obligation to look behind what was in the POC that she and her firm did not prepare, but that another firm had prepared, and upon which she apparently relied? But I don't think that she did. The only issue in the- You can't contend that the contents are accurate without having some basis to say they're accurate, can you? Except for the fact, Your Honor, is that the objection was limited to flood insurance charges, which the judge found were properly imposed. It had nothing to do with HSBC or UJRA, and it was imposed by FEMA doing a MAP plan. And the record shows that both the UJRA firm and HSBC, on three separate occasions, provided information either to Ms. Hamer, the debtors' counsel, or to the debtors themselves on how to eliminate the flood insurance. But it was part of the judgment, and that was the only objection. Is it- I mean, if you're asking, did she review every aspect of the proof of claim before making that statement, I think the answer is almost certainly no. The POC was not exactly a lengthy and complex document, was it? It wasn't, but she was defending the objection. Let me- I raised a question with Mr. Sheehan, and I actually alluded to it again with you, intending it to be something of a softball, but let me take you back to the representation that Ms. Doyle made in the disjunctive, in the motion that debtors have failed to make payments to discharge the arrearages on the mortgage, or have failed to make the current monthly payment on the mortgage since the filing of the Chapter 13 petition, or have failed to do both. My understanding was that that was at least a basis, one basis, that the bankruptcy court used for its sanction. And I understand Ms. Sheehan to be taking the position that it really is inaccurate, it really is a misrepresentation. I would- I want to know from you if that is the case, or if rather at least one disjunctive portion of that representation is facially accurate. Well, clearly it's accurate, Your Honor, because we- I already went over the payment history. So the bankruptcy court can at least be said to have been wrong in using this as a basis. Right. And I think you also have to look at what Judge Fulham said in his opinion. In the May 1st hearing, Judge Sigmund stated on the record that no sanctions would be imposed as a result of the filing of the motion for relief, although she wasn't happy that Mr. Fitzgibbons had come there that day after the two payments, which had been represented to be made in January, had just been received in late April. But Mr. Fitzgibbons gets off lighter than anybody else. That's correct. Well, other than the Debtors' Council. But the fact remains, Your Honor, that the judge said there will be no sanctions. Yeah, I'm going to give you a break. There are going to be no sanctions as a result of the motion for relief. And then she issued the order to show cause as a result of yet another debtors' misrepresentation that she had been asking Mr. Fitzgibbons for months for a complete accounting. She had not. She had not. What doesn't make sense is that she issues an order to show cause involving hearings and sanctions on the basis of the debtors' misrepresentation. That's correct. And that's been what I've been trying to... Maybe Mr. Sheehan can clarify that. Yeah, I mean... It doesn't make sense that she would want to sanction the party that allegedly didn't make the misrepresentation. I think that what this Court stated in the Fellheimer case, which was very surprising to me that the trustee would rely on this language, because if the Fellheimer case is really what's required for a sua sponte after the fact, no safe harbor imposition of sanctions under 9011... Okay, speaking of sanctions, and Judge Vanden Troepen had asked about it. Maybe he has another question about that, but I'll go ahead and ask. Weren't you on notice that you were... The hearings, there were four days of hearings, if I remember correctly, that you were notified that you may be sanctioned for the conduct before the Bankruptcy Court? Right, but I think that what the case law says, even if this Court doesn't feel like adopting the Penny and Edmund standard that the Second Circuit has imposed, requiring subjective bad faith for a sua sponte 9-11 motion, the fact is that our own opinions all say that the conduct must be very specifically identified. Well, you're talking about the merits. I'm talking about the notice. Were you aware when you were going into those hearings that you were about to be sanctioned or that sanctions could be imposed? We were only aware... Well, I mean, the order speaks for itself, but it was the first thing I complained of in the hearing, that it doesn't say what behavior. We had heard... Well, let me read you... How about the form of the sanctions? Were you aware of that? No, not at all, Your Honor. All it said is that she was displeased with the proceedings, and it really had much more to do with Moss Cadillus and especially... And so wasn't she required to tell you the form of sanctions under consideration? I think that that's absolutely required, and... Didn't we say that in Prosser and other cases like that? Yes, and also... So the person that is... I don't want to use the term nitpicking, but the person that is pointing to improper conduct on behalf of counsel may not have performed properly herself. Is that the situation? That's correct, Your Honor. And again, just reading 9011C1B, it says that if it's on its own initiative, the court must describe the specific conduct that appears to violate Subdivision B, which didn't happen. But that's not what I understand Judge Van Antwerpen to be asking about. Particularized notice of grounds is one thing. Right. Notice as to the specific forms of the sanctions is materially different. Well, I agree with that, but it's still... We had no idea of what they were looking for from the Udren firm. We did know that there was... Who is they? I'm sorry. That what the court, and more importantly, the trustee, because the trustee had never filed anything, and the trustee ended up taking the lead. I mean, when you hear the question to Ms. Gibbons regarding the equity in the property, that was never an issue before. We had no notice that there was going to be a sanction because of the allegation of lack of equity in the property, which was never an issue in the case. The sanctions seem so benign to me. Fitz... Is it Fitzgibbons? Yes. He was not sanctioned. He was not sanctioned. Ms. Hamer was not sanctioned. They're about as benign as can be, I thought. I know. But you see... Your complaint is not about that. It's what? Well, I have complained. I mean, if you read my brief... Not the severity of the sanction, but the imposition. Well, the severity... I mean, I point once again to the statement of any sanction against an attorney is serious in... What is it? Page 33 of the Fellheimer decision. Let me ask you something, Mr. Barton. I mean, all along, I mean, I understand the question of form, but aren't we emphasizing form over substance when the judge in fact said that you have been misrepresenting or facts before the court in the pleadings that have been filed before the court? Well, the only reason, Your Honor, that this hearing ever got to May was the fact that a blatantly false representation had been made to the court that payments were made. There were checks attached to the answer to the motion for relief, which ended up being mailed. Those very checks, the front of the checks were on there, and they were mailed two and a half months later, right before the actual hearing. You know what I see, though, is that you're justifying the wrongdoing of the attorneys on the basis of the wrongdoing of the debtor. But I'm not... The thing is, when the allegations were made... The debtor's attorney was sanctioned. I'm aware of that, but I'm not sure that we should... I'm saying it's true when made, Your Honor. And what happened is it's being judged in May. The motion is filed in January. That's my point. It's filed in January. It gets continued to May because of false representations that payments were made, which were not. By the time we get to May, there are different circumstances, but you can't judge the accuracy of the pleading by the condition in May. The payments had not been made when the motion was filed, when the submission was filed, but they had been by the time the hearing was over. They were received in the foreclosure department three days before the hearing, the same checks which were represented to have already been mailed in January. That development doesn't change the falsity of the representation made in the original, in the initial... Except there was no... But if I disagree... By debtor's counsel. Oh, by debtor's... That's correct. That's correct. I'm sorry. I thought you meant by Ms. Stoyer. Very good, Mr. Barth. Thank you very much. Thank you. Mr. Sheehan. Mr. Sheehan, I was by no means overstating when I confessed at the outset my lack of expertise in the bankruptcy field, and that extends throughout my legal career. But what little I do know, it strikes me as rather unusual that the U.S. trustee would be appearing in a relatively small amount matter, I'm not saying not important, a relatively small amount matter, Chapter 13. Am I wrong about that? Well, no. I mean, certainly the sanction in this case, as Mr. Barth pointed out, is not, I think, a huge issue to either side here.  It's like a threshold question of, does the behavior that happened in this case comply with Rule 9011 standards? And this is a, it's an ongoing problem in bankruptcy. So are you concerned about what may have driven the bankruptcy judge here, and what certainly Judge Fulham seemed to think animated the bankruptcy judge's decision? And that is the nature of the practice, or the evolution of the practice, and the distance that has resulted from computerized relationships between client and attorney. Is that what is at least partly important to the U.S. trustee here? Well, that is important to the United States trustee, though, and I will point out that there are several other cases pending right now in different bankruptcy courts where that issue is front and center. That's not, though, really what's at issue in this appeal. I mean, the new track issues, the Moscadillas issues, the LPS issues, it's not quite correct to say that LPS and Moscadillas were let off scot-free here. The Judge Sigmund simply noted that there was not enough of a factual record there to sanction them, and she essentially deferred action against Moscadillas and LPS to the United States trustees' further investigation in other cases. I think what's notable here is that, really, none of the missteps in this case were actually caused by the U-Turn firm relying on new track. These were actually, you know, these are missteps that happened because they relied on nothing at all. And it actually leads me to... Is that the culture that the bankruptcy judge then was referring to in this sanction of Mr. U-Turn? Well, the culture is what was in the June 9th order. The culture is filing things without taking the time and taking the steps to verify that what you're filing is correct. Including information that's derived from the new track program? That's part of it, and I'd actually like to point out... I misunderstood you. I thought before you said that's not the problem. The problem is a failure to investigate. But it begins, does it not, as I understand the factual history of the case, from taking information from a screen, not investigating further to ascertain whether it's reliable or not, or accurate or not? Well, there's actually two different things going on here, and this actually brings me into the response that I wanted to make about the lack of equity finding here. The two problems that are going on are, one, taking the new track materials as gospel, which, again... At face value. At face value. And that is a problem, though, again, that's not actually what happened with any of these three misstatements in this case. What did happen here was that they took the new track information and never saw it to go beyond that. And I'd actually... I don't understand the difference. Well, here's the difference. I mean, I call your attention to page 134 of the record, and this is the testimony of Ms. Graves from HSBC, explaining exactly what is in the universe of information that Udren would have received through new track. And she says that, look, their new track information is going to be the loan number, mortgages name, property address, payment amount, late fees, anything that would be due knowing at that time. What's not mentioned there is there's nothing in new track that tells them what the equity was. There's nothing in new track that tells them whether the debtor is due or do not have equity. That was the universe of information that Ms. Doyle had when she filed... So what is an attorney to do, such as Mr. Fitzgibbon? I don't know if he's the one that got information. What is an attorney to do when you turn on the screen and you see this information and you have to file a pleading? Well, I think you have two choices. You can either file the pleading without the allegations that you can't support. That is, there's really no reason... How do you support the allegations? You have to see what's on the screen and then you have to investigate further? Is that what you're suggesting? Well, again, I think there's an open issue on how far... You have to call the bank and say, is this accurate? Well, again, that's not what happened here because they were not sanctioned for using any of the information from NUTRAC. They were sanctioned for putting in allegations that were not taken from NUTRAC. And, for example, that is exactly what happened with the allegation regarding the lack of equity. That wasn't part of the NUTRAC information. Ms. Doyle did not rely on anything at all when she put that in her pleading. Mr. Sheehan, one last question, and I want to take you back once again to the imposition of the sanction on Mr. Udren, because I'm trying to understand what the position of the U.S. attorney is. And, frankly, I'm left at least with what is at least a notion that you're arguing something in the nature of vicarious liability here. And surely that can't be what Rule 11 and 9011 are about. How am I wrong? No, again, there's no—we're not seeking vicarious liability here, and we don't take the position that that's what 9011 provides or that that is what Judge Sigmund did. Our position is simply that she enforced that part of 9011 that says the persons who cause violations can be sanctioned, and her factual finding was that Mr. Udren caused that violation. Okay, time is up. Mr. Sheehan, if I could just ask one question. Are you representing that this type of thing is a general problem in the bankruptcy courts? Well, I'm not sure that that's part of the record here, though. It's not something I would consider in making a decision, but you said something before that there are other cases with this type of situation pending. Is that what you were saying in that? There are a number of cases both pending and decided and reported that involve the same issues. In fact, Mr. Barton mentioned one of them, which was the Hill case by Judge Agresti out of the Western District of Pennsylvania. Could you clarify what you mean by the same issue? Well, the same issue is in terms of creditor attorneys for mortgage companies filing inaccurate pleadings without— for filing pleadings in bankruptcy cases. Some of these cases involve problems with LPS. Some of them involve problems with other law firms and providers. But there are a number of cases involving similar issues, basically errors in proofs of claim, errors in motions for relief from stay, virtually all of which are— Errors happen all the time. Okay. You're separating this from the computer program. I thought that the computer program was at the heart of the problems here. Well, the problem generally are the systemic errors where the errors occur not because of like a one-off human error, but the errors occur because of a policy or procedure that itself is faulty. And again, I think there are different types of faulty procedures out there. We would argue that what happened in this case may have been one of them. What has happened in these other cases are variations on the same theme. Okay, Mr. Sheehan. All right. Thank you. Mr. Sheehan, thank you very much. Oh, I'm sorry. Judge Vanden Heuvel, any further questions? No further questions, and thank you very much. Thank you, Mr. Sheehan. Thank you. And thank you, Mr. Bart, as well, for your excellent arguments. We'll take the case under advisement.